MAYOR AND ALDERMEN OF CITY OF VICKSBURG *v.* EUGENE J. MULLANE.

[63 South. 412.]

1. PRIVILEGE TAX. *License: Plumbing business. Municipal corporation. Ordinances. Sanitary regulations. Discriminatory regulations. Constitutional law. Police power. Regulations of business. Occupation tax. Expenses of regulation. Code 1906, section 3854.*

A practical plumber who is not a member of a firm, nor an executive officer of a corporation engaged in plumbing work, but does such work as he obtains himself and follows his trade for a livelihood, and who does not maintain a bureau for the purpose of obtaining contracts and has no special place of business in which he keeps plumbing supplies in order to furnish materials to carry out contracts, is not liable to pay the privilege tax provided by Code 1906, section 3854 before he can do his work as a plumber.

2. MUNICIPAL CORPORATIONS. *Ordinances. Sanitary regulations.*

Municipalities have the power to adopt reasonable regulations to protect and preserve the property and health of the community. They may enact all proper ordinances to provide and enforce sanitary regulations including reasonable regulations in regard to plumbing.

3. LICENSE. *Ordinances. Discriminatory regulations.*

A city ordinance which after providing that an applicant for a license as a plumber or drain layer shall pass a thorough examination before a board of examiners as to his experience, knowledge and skill in practical-sanitary plumbing continues: "And shall satisfy the said board that the applicant, or at least one resident member of the firm or one resident executive officer of the corporation making the application, is a master plumber, or a drain layer, as the case may be, skilled and experienced in his trade, competent to do sanitary plumbing or drain laying properly" etc., discriminates against individuals in favor of firms and corporations by permitting persons employed by the latter to do plumbing without an examination, providing one member of the firm is a licensed plumber, while requiring all individual plumbers to be qualified licensed plumbers and is violative of the provisions of the fourteenth amendment of the Federal Con-

stitution that "no state shall deny any person within its juris-
diction the equal protection of the laws."

4. CONSTITUTIONAL LAW. *Police power. Regulations of business.*
   While the right of every person to pursue any lawful business
   occupation or profession is subject to the paramount right in-
   herent in every government as a part of its police power to im-
   pose such restrictions and regulations as the protection to the
   public may require, still such restrictions and regulations must
   be uniform and the obligations or burdens must be on all of the
   same class alike.

5. LICENSES. *Occupation tax. Expenses of regulation.*
   Under an ordinance of a municipality regulating the plumbing
   business, by requiring an examination of applicants for a license,
   it is proper to require a reasonable fee to be paid by the appli-
   cants to pay the expenses of such examinations.

APPEAL from the chancery court of Warren county.
HON. E. N. THOMAS, Chancellor.

Suit by the Mayor and Aldermen of the City of Vicks-
burg against Eugene J. Mullane. From a decree grant-
ing a motion to dissolve a temporary injunction, com-
plainant appeals.

The facts are fully stated in the opinion of the court.

*Anderson, Vollor & Kelly,* for appellant.

There are two legal grounds upon which this ordinance
in all its parts is bottomed, either of which is perfectly
good, and upholds and establishes its validity, and they
are: First, it is a sanitary measure and falls under the
police power of the city; and second, it is for the protec-
tion and preservation of property owned by the city. We
will now briefly consider these two propositions:

First: The ordinance as a sanitary measure, and the
power of the city in the premises. It is the universal
rule that municipalities have even an inherent power, in-
dependent of its delegated power, to protect and preserve
the health of its population, and in so doing, may adopt
any reasonable regulations necessary to get the result.

28 Cyc. 709; *Gundling* v. *Chicago* (Ill.), 48 L. R. A. 230; *State* v. *Gardner* (Ohio), 41 L. R. A. 689. Such is the rule announced in the following cases: *Douglas* v. *Ruddy* (Ill.), 8 L. R. A. (N. S.) 1116; *Cavin* v. *Coleman* (Tex.), 96 S. W. 774; *Singer* v. *State* (Md.), 8 L. R. A. 551; *Nechamcus* v. *Warden* (N. Y.), 27 L. R. A. 718.

Second: The ordinance as a protection and safeguard of property owned and controlled by the city. While it is true that this ordinance is entitled, "An ordinance regulating house sewerage, plumbing, drain laying and connections with the house sewers in and under the control of the city of Vicksburg, drain laying and connections spoken of in this ordinance are intended to connect with the city's system of sanitary sewers, and are for the purpose of carrying all of the house sewerage and emptying it into the sanitary sewers, which all belong exclusively to the city and are its property.

The two subjects, therefore, are intimately connected, and are to be considered for all practical purposes as the property of the city. The city, therefore, has a perfect right to protect this property and all of its connections in any reasonable way that it may see fit to adopt. 28 Cyc. 741.

We now come to consider, as we understand it, the real question in the case. The point most strongly relied on by counsel in the court below was, that this ordinance discriminates against individual plumbers in favor of firms and corporations, and for that reason it is unequal and un-uniform and it is class legislation, and therefore was unconstitutional and void, and the case of *State* v. *Gardner*, 41 L. R. A. 689, *supra,* and the case of *Henry* v. *Campbell* (Ga.), 18 A. & E. Ann. Cases, 178, are heavily relied on to support that proposition.

In the first place we deny that appellee and other individuals are discriminated against in the least particular under the provisions of this ordinance. The language relied on to support this proposition of appellee's is

found in section 13 of the ordinance, and reads as follows: "Every applicant for license . . . shall pass a thorough examination by said board as to the applicant's experience, knowledge and skill in practical sanitary plumbing or drain laying; and shall satisfy the said board that the applicant, or at least one resident member of the firm, or one resident executive officer in the corporation making the application, is a master plumber, or a drain layer, as the case may be, skilful and experienced in his trade, competent to do sanitary plumbing or drain laying properly and in accordance with the city's ordinances, who will give his personal attention to the work, also that the applicant will employ only competent help and is financially responsible."

The court will notice that the only thing that this ordinance does along the lines complained of, is to not require each member of a firm or each officer of a corporation, as the case may be, to be examined and pay the license; it simply provides that one resident member of a firm or one resident executive officer of a corporation shall appear before the board of examiners and satisfy the board that he is a master plumber or drain layer; and that he will give his personal attention to the work, and upon that, the license is issued to the firm or the corporation, as the case may be, but with the distinct understanding that the person who is examined shall, himself, give his personal supervision to the work which the firm or corporation may be employed to do. And with the further provision in the latter part of section 14 that the license may be revoked at any time "when it is found that the member of the firm or officer of the corporation, whose experience has formed the basis for the license, has ceased such relation."

Now, suppose it is an individual who applies for license, he does no more and no less than this firm or this corporation. He stands the examination himself, gets his license and may then do the work either himself or

employ men to do it for him, provided, of course, he
gives his personal attention and supervision to it. Where
is he discriminated against under such a method? No-
body is allowed in either instance to superintend that
work except the particular individual who was examined
and got the license, whether he be a member of a firm or
corporation, or a private individual doing the work on his
own hook. There is no element whatever of discrimina-
tion under the language of this section.

Now, in the Gardner case, *supra,* the law on that ques-
tion was an act of the legislature, providing for the ex-
amination and license of plumbers, as in the case at bar.
The first section of the act requires that all who engage in
the business of plumbing, whether master, or employing
plumber, or journeyman, shall first secure license; and
section 2 provides that in case of a firm or corporation
the examination and licensing of any one member of any
such firm or the manager of the corporation shall satisfy
the requirements of the act. In other words, it provides
that a journeyman, for whomsoever he works must have
a license, and an employing plumber, if not a member of a
firm or a corporation, may not pursue the calling without
a license, but a master or employing plumber, if he be a
member of a firm, another member of which has procured
a license, is exempt, although he may be one who has,
as a journeyman, applied for a license and failed for in-
competency. So, too, in case of a corporation, if the man-
ager is licensed, every member of the corporation may
work without a license, without reference to their compe-
tency.

It will readily be seen that the provisions of this act,
and the provisions of the ordinances in the instant case
are as dissimilar as possibly can be. There is no doubt
about that Ohio statute's being class legislation and dis-
criminatory, therefore, void, because it does not provide
that the member of a firm or the officer of a corporation,
who stands the examination and gets the license, shall
also do the work or superintend it.

The other case especially relied on by counsel is that of *Henry* v. *Campbell,* 18 A. & E. Ann. Cases, 178, *supra.* This was an ordinance passed by the city of Atlanta, regulating the plumbing business in that city. It provided that: "Any person desiring to work at or engage in the business of plumbing, either as master, employing plumber or journeyman plumber in the city of Atlanta, shall be required to submit to an examination before a board of examiners as hereinafter provided, as to his experience and qualifications in such trade, business or calling. In the case of a firm or corporation, the examination or licensing of any one member of a firm or the manager of a corporation shall satisfy the requirements of this ordinance."

The objectionable feature of this ordinance, it will be observed, is that it permits all of the members of a firm or corporation, it matters not how many, to do plumbing work on only one license, whereas if it was not, a firm or a corporation but only one individual he, too, would be required to be examined and have a license before he could do such work.

The court very properly says that the ordinance, "Does not operate equally upon all of a class pursuing the calling under like circumstances and is invalid." *Ib.* 180.

But this ordinance is totally unlike the one under consideration, as will be readily observed, for exactly the same reason advanced by us in the Gardner case above. In the annotations to this case, pages 181 and 182, numerous authorities are cited which, we submit, abundantly establish the validity of the ordinance in the instant case. In fact, we have found no act or ordinance containing provisions at all like those pointed out in section 13 of the Vicksburg ordinance, to the validity of which any court has even raised a suggestion of doubt.

There are many other authorities which we could cite in support of our position, but we will content ourselves with referring the court to the cases collated in the note

to the case of *Richie* v. *Smith,* 7 A. & E. Ann. Case, *supra,* on pages 580 and 581.

*Henry & Canazaro,* for appellee.

The ordinance requiring a privilege license for plumbing and drain laying is not a police regulation, but a privilege tax for the purpose of raising revenue; second, sections 13, 14 and 44 of the Ordinance are oppressive, discriminatory and highly unreasonable; third, the ordinance violates the prohibition of section 1, paragraph a of the fourteenth amendment of the United States Constitution; fourth, said ordinance is in violation of sections 14 and 80 of the Constitution of the state, and fifth, the ordinance is class legislation, it encourages and sanctions monopoly and is unreasonable and void.

Section 18 of the ordinance is the only provision which applies to the inspection of the plumber's work; this duty devolves upon the city engineer, but he gets no pay for this work, and the other members of the board since no examination is required and as they have no other duty to perform, cannot claim any pay from the city. It is in fact apparent, that not one cent of the license money is put out by the city as expenses for this so-called police regulation and the appeal now for the first time by appellant's attorney that the ordinance is a police regulation has no merit. *Jackson* v. *Newman,* 59 Miss. 385; *Pitts et al.* v. *The City of Vicksburg,* 72 Miss. 181; *Greenwood* v. *Bank,* 75 Miss. 165; Section 3854 of Mississippi Code, 1906, under title, Privilege Taxes, provides: "On each individual, firm or corporation doing a plumbing business in cities, or towns of ten thousand or more inhabitants, where they have waterworks and sewerage, fifty dollars."

Under the foregoing section the legislature contemplated that the fifty dollars license required on a plumbing business, included the right to do drain laying or any other sewerage work, and the only power which the city

of Vicksburg has to levy privilege taxes on plumbing business is fifty per cent of the privilege tax assessed by the state. *Greenwood* v. *Bank,* 75 Miss. 165.

The license required of plumbers doing plumbing business as stated by this honorable court in the case of *Wilby* v. *State,* 93 Miss. 767, and under that authority Mr. Mullane, the appellee is exempt from the state license and therefore exempt from the creature of the state, to wit: the city of Vicksburg. 28 Cyc. 363; *Pitts et al.* v. *City of Vicksburg,* 72 Miss. 181; 6 Words and Phrases, 5417; *State* v. *Gardner,* 51 N. E. 136, 41 L. R. A. 689, 65 Am. St. 785; *Wilby* v. *State,* 93 Miss. 767; *Bear* v. *Cedar Rapids,* 126 N. W. 324, 27 L. R. A. (N. S.) 1150.

The city of Vicksburg can no more enact or enforce unconstitutional and discriminatory police regulations than it can a revenue measure. 28 Cyc. 676; 28 Cyc. 370; *Wirt Adams, State Rev. Agent,* v. *Miss. Lbr. Co.,* 84 Miss. 23; *State* v. *Lawrence,* 61 So. 976.

We respectfully submit that no court in the land has ever countenanced such unjust discrimination as the city of Vicksburg insists on practicing. None of the other courts have hesitated for a moment to declare an ordinance or act of the legislature of the nature and character of the one under discussion to be unconstitutional and void, and our own court in the case of *Wilby* v. *State,* 93 Miss. 667, has announced, with all emphasis, its condemnation of any legislation which tends to shut out competition and create monopolies as unjust to the laborer and equally wrong to the public. Ordinances pretty much like the one in question have been repeatedly declared unconstitutional as we have said.

The case of *State* v. *Gardner,* 58 Ohio St. 599, 65 Am. St. 785, is one of the early decisions on the subject. It offers a splendid illustration of the vice of this ordinance and shows it to be even more discriminating and offensive than the Gardner case. *Henry* v. *Campbell,* 133 Ga. 882, 18 A. & E. Ency. 178; *State* v. *Justus,* 90 Minn.

474, 97 N. W. 124; *State* v. *Smith,* 42 Washington, 237; 7 A. & E. Anno. Cases, 577; *Wilby* v. *State,* 93 Miss. 767; *Lochner* v. *N. Y.,* 198 U. S. 45, 25 U. S. Sup. Ct. 539; 49 U. S. (L. Ed.) 439; 3 A. & E. Anno. Cases, 1333.

In all these cases the courts recognize the police power of the state and the right to regulate and supervise trades, callings and occupations as health measures; nevertheless the courts hold that the exercising of police power must be reasonable and necessary and must not abridge the liberty of the citizens as guaranteed by the Constitution.

The power of the courts to set aside an unreasonable ordinance or police regulation when it appears that it may be oppressive, unfair or partial is too well established by a long line of decisions. 28 Cyc. 370; *W. T. U. et al.* v. *The City of Cedar Rapids et al.,* 126 N. W. 324, 27 L. R. A. (N. S.) 1150.

Counsel for the city makes this statement: "Just here we wish to state a fact that is outside the record, that there are probably not over half a dozen plumbers in the city who will apply for the license provided for under this ordinance and therefore the big sum of money which the court must have supposed that the city would get out of these plumbers, is entirely vaporous and unsubstantial."

This statement undoubtedly has reference to the oral opinion of the learned chancellor in the court below, and we notice only to suggest that it is not a question of money, but one of equal justice.

It seems to us that the rights of Mr. Mullane to pursue his calling and trade without oppression or without being trampelled upon is paramount to any monetary consideration. *Wilby* v. *State,* 93 Miss. 767; *Wirt Adams, State Rev. Agent,* v. *Miss Lbr. Co.,* 84 Miss. 23.

We respectfully submit that the Vicksburg ordinance is oppressive, discriminatory and unfair and tends to encourage and, indeed, sanctions monopolies of the plumber's business in the city of Vicksburg; it is unjust

to the appellee and oppressive to the public, and from
the same point of view which the chancellor declared the
ordinance unconstitutional and void, we submit with con-
fidence that this decision will be upheld and the case af-
firmed.

REED, J., delivered the opinion of the court.

Eugene J. Mullane is a practical plumber in the city of
Vicksburg. He is not a member of a firm nor an execu-
tive officer of a corporation engaged in plumbing work.
Such work as he obtains he does himself, performing his
own labor. He follows his trade for his livelihood. He
does not maintain a bureau for the purpose of obtaining
contracts. He has no special place of business in which
he keeps plumbing supplies in order to furnish material
to carry out contracts. By virtue of the construction of
the laws of Mississippi, relative to privilege taxes (Code
1906, section 3854), in the case of *Wilby* v. *State,* 93
Miss. 767, 47 So. 465, 23 L. R. A. (N. S.) 677, he is not
liable to pay such state tax before he can do his work
as plumber in Vicksburg.

The city of Vicksburg constructed and now owns and
controls a sanitary sewage system. In 1909 an ordinance
for the purpose of regulating and governing this system
was passed, and is entitled "An ordinance regulating
house sewerage, plumbing, drain laying, and connections
with the house sewers in and under the control of the
city of Vicksburg, and for other purposes." This ordi-
nance is set out at length in the record, and makes quite
a number of provisions for the government of the sew-
age system.

Section 12 provides for a "board of examiners of
plumbers," to consist of the city engineer, with one mas-
ter plumber and one architect.

Section 13 is on the subject of "Qualification of Plumb-
ers and Drain Layers," and reads: "Every applicant
for license as a plumber or a drain layer, as the case may

be, shall appear before the board of examiners of plumbers; shall pass a thorough examination by said board as to the applicant's experience, knowledge and skill in practical sanitary plumbing or drain laying; and shall satisfy the said board that the applicant, or at least one resident member of the firm, or one resident executive officer in the corporation making the application, is a master plumber, or a drain layer, as the case may be, skilled and experienced in his trade, competent to do sanitary plumbing or drain laying properly and in accordance with the city's ordinances, who will give his personal attention to the work, also that the applicant will employ only competent help and is financially responsible.   Upon satisfactory proof of the qualifications and fitness of an applicant for license as plumber or as drain layer, the board of examiners of plumbers shall issue a certificate of qualification."

Section 14, making provision for licensing plumbers and drain layers, is as follows: "License to do plumbing or drain laying, or both, in connection with the city's sewers, shall be granted by the mayor and aldermen only after a written application has been made, in the form prescribed, accompanied by a certificate of qualification issued by the board of examiners of plumbers; the application shall also be accompanied by a bond, with two or more individuals, or with a surety company, as surety, acceptable to the mayor and aldermen, for one thousand dollars for plumbing or for plumbing and drain laying, or for five hundred dollars for drain laying only, conditioned substantially that the principal will indemnify and save harmless the city from all damages or injuries resulting from any work done, or any neglect or omission incident thereto, by the principal or his employees, or from any improper materials used therein; that the work will be faithfully performed and that the principal will comply with all ordinances and regulations of the city concerning plumbing, drain laying, and the city's sewers,

106 Miss. 14

and will restore to like condition to that found, any street, sidewalk or other property disturbed by him or his agents, and shall keep the same in as good repair for one year. The application for the license for drain laying shall also be accompanied by a cash deposit of fifty dollars, which sum, or so much thereof as may be necessary, shall be used under the direction of the street commissioner, in repairing any street or other public property, whenever said applicant shall fail to repair the same within twenty-four hours after being notified in writing by the street commissioner; and said deposit shall be at all times maintained by the applicant up to at least fifty dollars. Each plumber's or drain layer's license shall expire December 31st, and may be revoked at any time by the mayor and aldermen for a violation of this ordinance, also at any time when it is found that the public welfare so requires, or that the member of the firm or officer of the corporation, whose experience has formed the basis for the license, has ceased such relation. Each application and each license shall state whether it is for plumbing, or for drain laying or for both. The fee for a license for plumbing or for plumbing and drain laying shall be twenty-five dollars and that for drain laying only, fifteen dollars. No other person is allowed to use the name of a licensed plumber or drain layer, either directly or indirectly, to obtain a permit, to do work, or to make returns.''

Section 44 provides for penalty in the following words: ''Any person, violating any of the provisions of this ordinance shall upon conviction, be finded not more than one hundred dollars for each offense, and every twenty-four hours continuance shall constitute a separate offense. If the offender be a master plumber or drain layer, he shall also forfeit his license.''

The city of Vicksburg filed a bill in chancery setting forth the foregoing facts, and stating that Mr. Mullane contended that he was not liable to pay the fees provided

in section 14 of the ordinance, that he persisted in trying to do his work as plumber without paying his license fee, and in open violation of the ordinance, and that he claimed the ordinance is illegal, discriminating, and not controlling upon him. An injunction was asked to restrain him from doing the plumbing work specified until he shall have complied with the requirements of the ordinance. The writ of injunction prayed for was granted. An answer was filed, and the court heard the motion to dissolve upon bill, answer, and affidavit, and sustained the motion.

The city of Vicksburg contends that the ordinance, as it affects the present controversy, should be upheld for two reasons: "(1) It is a sanitary measure, and falls under the police power of the city; and (2) it is for the protection and preservation of property owned by the city."

Municipalities have the power to adopt reasonable regulations to protect and preserve the property and health of the community. They may enact all proper ordinances to provide and enforce sanitary regulations. Since it is important under present conditions to have the drainage and sewage in public buildings and private residences done with skill and care, we deem it within the power of the municipality to make all reasonable and appropriate rules for the regulation and supervision of plumbing work. Counsel for the city have in their able brief quite clearly presented their position as to the power of the municipality to adopt proper sanitary measures and regulations for protection and preservation of property.

In discussing this subject, Judge WINSLOW, delivering the opinion of the court in the case of *Winkler* v. *Benzenberg,* 101 Wis. 172, 76 N. W. 345, said: "Under modern systems of house building and disposal of sewage, the dangers to the health of the entire public arising from defective plumbing are so great, and at the same time so insidious, that, were the state unable to provide for the proper regulation and supervision of the plumber in his

work, so as to minimize the danger to the public health from the escape of sewage gas, the state would certainly be unable to protect the public life and health in a most important particular. This power may be exercised by the legislature by demanding practical knowledge of his business on the part of the plumber, or it may be done by requiring inspection and supervision of his work by experts, or by both means combined, and, when such regulations are brought before the courts, the question simply is whether they are really appropriate and reasonable measures for the promotion of the public health and safety, and hence are a valid exercise of the police power, or whether they go further than this, and unreasonably invade the right of the citizen to pursue a lawful business, under the guise of a police regulation.''

Now it is contended by Mr. Mullane that the ordinance violates the Constitutions of the nation and the state, in that it is oppressive, discriminatory, unreasonable, and tends to create a monopoly.

Section 13 of the ordinance, after providing that an applicant for a license as a plumber or drain layer shall appear before the board of examiners, and pass a thorough examination as to his experience, knowledge, and skill in practical sanitary plumbing or drain laying, continues: ''And shall satisfy the said board that the applicant, or at least one resident member of the firm, or one resident executive officer of the corporation making the application, is a master plumber, or a drain layer, as the case may be, skilled and experienced in his trade, competent to do sanitary plumbing or drain laying properly,'' etc.

It is claimed that the provisions which only require one member of a firm, or one officer of a corporation, to qualify ''discriminate against individuals in favor of firms and corporations, encourage and sanction monopolies, and are oppressive in their very nature.''

It has been held that ''the right of every person to pursue any lawful business, occupation, or profession is

subject to the paramount right inherent in every government as a part of its police power to impose such restrictions and regulations as the protection of the public may require. *State* v. *Randolph,* 23 Or. 74, 31 Pac. 201, 17 L. R. A. 470, 37 Am. St. 655. It is also held that such restrictions and regulations must be uniform, and that the obligations or burdens must be on all of the same class alike. For instance, a license fee cannot be imposed upon persons where others in the same class are exempt under similar circumstances and conditions. *State* v. *Hinman,* 65 N. H. 103, 18 Atl. 194, 23 Am. St. 22.

In the case of *Winkler* v. *Benzenberg, supra,* the question involved was the validity of a statute in Wisconsin relative to the licensing of plumbers and the supervision of the plumbing business. A provision in the law was: ''In the case of a firm or corporation the examination or licensing of any one member of the firm or of the manager of the corporation shall satisfy the requirements of the act.'' It was decided that this was a discrimination in favor of firms and corporation and against plumbers doing business alone, and that it was an infringement upon the provisions of the fourteenth amendment of the Federal Constitution, that ''no state shall deny any person within its jurisdiction the equal protection of the laws.'' We quote, with approval, from the opinion of Judge WINSLOW as follows: ''The fourteenth amendment to the Federal Constitution requires that no state shall deny to any person within its jurisdiction the equal protection of the laws. In the language quoted with approval in the case of *Bittenhaus* v. *Johnston,* 92 Wis. 588, 596, 66 N. W. 805, 806 (32 L. R. A. 380), it is required 'that all persons subject to such legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed.' Under the law before us, it seems entirely clear that there is discrimination in favor of firms and corporations as against a plumber doing business alone. The plain

meaning and effect of the law is that several plumbers may form a partnership or corporation, and all engage in practical plumbing, when only one of their number has obtained or perhaps is able to obtain, a certificate of competency. Thus, three or four incompetent plumbers may associate themselves with another who had a certificate, and become thus enabled to do business, while a man perfectly competent, but doing business alone, must go through an examination, and obtain a certificate. This is certainly discrimination between persons under the same circumstances and conditions. It grants special privileges to members of a firm or corporation, and imposes special restrictions upon persons engaged in the same business who wish to prosecute their business alone.''

In *State* v. *Gardner*, 58 Ohio St. 599, 51 N. E. 136, 41 L. R. A. 689, 65 Am. St. 785, it was decided: ''A statute requiring all who engage in the business of plumbing, whether master, or employing plumber, or journeyman, to first pass an examination as to fitness and procure a license, but providing that in case of a firm, or corporation, the examination and licensing of any one member of such firm, or the manager of the corporation, shall satisfy the requirements of the act, thus permitting all members of a firm or corporation to pursue the business when only one member or the manager has procured such license, is unconstitutioanl and void, as not operating equally upon all of the class pursuing the same business under similar circumstances. A statute which imposes special restrictions or burdens, or grants special privileges, to persons engaged in the same business under similar circumstances cannot have a uniform operation, and is void, because it is in contravention of the equal right guaranteed to all in the enforcement of laws and in the enjoyment of liberty and of an equal right in the acquisition and possession of property. A statute is unconstitutional and void if it operates unequally, in that it

imposes the burden of an examination and license fee up-
on certain persons, and exempts others of the same class
pursuing the same business under similar circum-
stances.''

In the case of *Commonwealth* v. *Shafer*, 32 Pa. Super.
Ct. 497, it was decided that a regulation in an act which
provided for the registration of master plumbers and
fails to provide for the registry of journeymen is invalid
as lacking in uniformity.

A law in Minnesota which required journeymen plumb-
ers only to stand an examination and procure a certifi-
cate of competency was held invalid as making an arbi-
trary and unjustifiable distinction.  *Chapel* v. *Justus,* 90
Minn. 474, 97 N. W. 124.

The following is a provision from an ordinance in the
city of Atlanta in regard to licensing persons engaged
in the plumbing business: ''No person, firm, or corpora-
tion engaged in or working at the business of plumbing
shall engage in or work at said business in the city of
Atlanta, either as master, employing, or journeyman
plumber, unless such person, firm, or corporation first
receives a license therefor, in accordance with the pro-
visions of this ordinance.  Any person desiring to work
at or engage in the business of plumbing, either as mas-
ter, employing, or journeyman plumber, in the city of
Atlanta shall be required to submit to an examination
before a board of examiners, as hereinafter provided, as
to his experience and qualifications in such trade, busi-
ness, or calling.  In the case of a firm or corporation, the
examination or licensing of any one member of a firm or
the manager of the corporation shall satisfy the require-
ments of this ordinance.''

In the case of *Henry* v. *Campbell,* 133 Ga. 882, 67 S. E.
390, 27 L. R. A. (N. S.) 283, 18 Ann. Cas. 178, it was de-
cided that this ordinance, where one member of a firm or
the manager of a corporation has been licensed, permits
others than the member or manager, by virtue of the li-

cense, to do the work of plumbing, without standing examination and procuring license as is required of others doing like work, and that the ordinance is discriminatory in character and therefore unconstitutional. In delivering the opinion of the court, Judge HOLDEN said: "This provision of the ordinance can have no meaning other than that, when one member of a firm or the manager of a corporation shall successfully stand the examination before the board of examiners and obtain a license to engage in or work at the business of plumbing, at least any other member of the firm and the corporation, through officials other than the manager, can engage in or work at the business of plumbing without obtaining the license required by the ordinance. The ordinance relates to persons, firms, or corporations engaged in or working at the business of plumbing, and the provisions of the ordinance state that the examination or licensing of any one member of the firm or the manager of the corporation shall satisfy the requirements of the ordinance. If the licensing of one member of a firm, or the manager of a corporation, satisfies the requirements of the ordinance 'in the case of a firm or corporation,' there is nothing else to be done in order to entitle any other members of the firm and the officials of the corporation other than the manager, who have not obtained a license, to do plumbing work. Giving the ordinance this construction, the conclusion is inevitable that it is discriminatory, for the reason that under its provisions one who is not a member of a firm or corporation, before engaging in or working at the business of plumbing, would have to stand the examination and obtain the license; whereas, one who is a member of a firm, and the corporation through officials other than the manager thereof, could engage in or work at the business of plumbing without having stood the examination or obtained a license, if some other member of the firm, or the manager of the corporation, in the case of a corporation, had stood the examination and obtained a license."

We understand from the brief of counsel for the city that they consider the ordinance saved from invalidity, on the grounds of discrimination and inequality, because it provides that the member of a firm or officer of a corporation who stands the examination and gets the license shall do or superintend the work, using the words in the ordinance, "who will give his personal attention to the work." We do not think this is so. The provision for personal attention or personal oversight will not answer the objections of inequality, or that the regulation is discriminating in its operation.

Are all the plumbers in Vicksburg treated alike? Are the burdens placed upon them by the regulations equal? Are they all therein granted the equal protection of the law? Is there not a discrimination in favor of firms and corporations and against plumbers working alone?

It seems to us that this ordinance imposes special restrictions and burdens on some and grants special privileges to others engaged in the same work in Vicksburg. All the plumbers in that city are not required to stand the examination and incur the expenses of a license fee. This burden is not placed on those working for a corporation where an officer qualifies or on a firm where one member procures license. It is imposed upon those like Mr. Mullane, laboring alone, doing his work by his own hands.

If a plumber works for a firm or corporation, he will not have to comply with the requirements of examination and pay for license. But he will have to do so if he attempts to work alone. No matter how skilled and competent he may be, he must be under the employment of a firm or a corporation, or he must bear the burden of examinations and expense of fee. A firm or corporation, under the ordinance, may employ plumbers without number who, when so employed, are taken from the operation of the ordinance. Surely this amounts to discrimination against plumbers working alone and in favor of plumbers employed by a corporation or a firm, and also

in favor of corporations and firms.  Surely this will tend to monopoly.

Mr. Mullane is a skilled laborer, doing work very important and, in these days, quite necessary.  As such laborer and as a citizen he has rights guaranteed him by the law.  Among these is "the preservation of his inalienable rights to labor."  Government should protect him in his sacred right to earn his livelihood by working at his trade.  It should see that no unequal burdens are imposed upon him, and that there is no discrimination against him because he labors alone.  This ordinance does not operate equally upon Mr. Mullane and all other plumbers in that city.  It is discriminatory as to him.

Sanitary measures designed for the protection and preservation of the health and property of a community may be adopted by a municipality.  But these must be general and equal in their application.  The regulations must be uniform.  They must not be discriminatory against and in favor of any persons subject to their operation.

The ordinance in this case, intended for a good purpose, we consider invalid for the reason we have stated.  The chancellor did not err in dissolving the injunction.

In view of the conclusions we have reached relative to the invalidity of the ordinance, we deem it unnecessary to enter into a consideration of the fee of fifteen dollars charged Mr. Mullane for drain laying only.  If proper and unobjectionable regulations of sewage, plumbing, and drain laying are adopted, then a reasonable fee may be charged in order to raise funds necessary to defray the expenses of examination of applicants, etc., the reasonableness of the amount of the fee to be determined by the facts in the case.  We note in this case that the board of examiners have not required the applicants to be examined as provided by the ordinance, and from the testimony of Mr. Twiss, the city engineer, who seems to have had the matter in charge, that he has not drawn any pay from the city for his services as an examiner.

*Affirmed.*