# SUPREME COURT OF TENNESSEE

### FOR THE

## MIDDLE DIVISION

### NASHVILLE, DECEMBER TERM, 1924.

*(Continued from Vol. 150.)*

---

STATE *ex rel.* M. C. GRANTHAM *v.* CITY OF MEMPHIS *et al.*[*]

## *(Nashville.* December Term, 1924.)

1. **CONSTITUTIONAL LAW.** Constitutionality of act considered, though deemed unconstitutional by both parties.

    Consideration of constitutionality of Pub. Acts 1915, chapter 59, creating board for examination and licensing of plumbers in cities of over 25,000, *held* necessary, in injunction suit against such city by unlicensed plumber, though deemed unconstitutional by both parties, in view of complainant's insistence that there was no legislative authority for city to create board. (*Post. p. 5.*)

Acts cited and construed: Acts 1915, ch. 59; Acts 1909, ch. 192.

Cases cited and approved: Going v. Going, 148 Tenn., 522; Clements v. Roberts, 144 Tenn., 152; Wilkie v. Chicago, 188 Ill., 444.

---

[*]On constitutionality of statute requiring Plumbers to secure license, see notes in 5 L. R. A. (N. S.), 674; 8 L. R. A. (N. S.), 1116; 27 L. R. A. (N. S.), 283; 50 L. R. A. (N. S.), 421.

State ex rel. Grantham v. City of Memphis.

2. **LICENSES.** City held authorized to provide for board to examine and license plumbers.

Under Acts 1889, chapter 163, authorizing city of Memphis to regulate and control plumbers, etc., such city may pass ordinance creating board for examination and licensing of plumbers, if consistent with Federal and State constitutions and statutes and general principles of common law, just, impartial, and reasonable, and not enforceable according to caprice of enforcing officers. (Post, *pp.* 5, 6.)

Acts cited and construed: Acts 1889, ch. 163.

Case cited and approved: Jones v. Nashville, 109 Tenn., 550.

3. **STATUTES.** Act requiring license fees, bonds, and examination of plumbers in cities of certain population only, held unconstitutional.

Pub. Acts 1915, chapter 59, creating board to examine and license plumbers in cities of over 25,000, *held* unconstitutional as requiring license fees and examination of both master and journeymen plumbers, and execution of bonds by former, in cities of such population only. (*Post, pp.* 6, 7.)

Acts cited and construed: Acts 1915, ch. 59.

Case cited and distinguished: State ex rel. Chapel v. Justus, 90 Minn., 474.

4. **LICENSES.** Act held unconstitutional as requiring examination of only one of several firm members engaged in actual plumbing work.

Pub. Acts 1915, chapter 59, section 6, *held* unconstitutional as permitting firm members, of whom only one has stood required examination for plumber's license, to engage in actual plumbing work, thereby unjustly discriminating against individual plumbers. (*Post, pp.* 7-10.)

Cases cited and approved: State v. Gardner, 58 Ohio St., 599; Henry v. Campbell, 133 Ga., 882.

Cases cited and distinguished: Vicksburg v. Mullane, 106 Miss., 199; State ex rel. Winkler v. Benzenberg, 101 Wis., 172.

State ex rel. Grantham v. City of Memphis.

5. **LICENSES.**   Ordinance requiring examination and licensing of plumbers, held not unconstitutional as not concerned with public health.

City ordinance requiring examination and licensing of plumbers, *held* not unconstitutional as only nominally concerned with public health and mere scheme for aggrandizement of certain classes, plumbing business being so intimately connected with public health as to be proper subject of police regulation.   (*Post, pp.* 10-13.)

Cases cited and distinguished:   State ex rel. Richey v. Smith, 42 Wash., 237;   Ex parte Smith, 231 Mo., 111;   Commonwealth v. Beaulieu, 213 Mass., 138.

6. **LICENSES.**   Ordinance held not unconstitutional as permitting firm to do plumbing business after examination of only one member or officer.

City ordinance, requiring examination of manager or superintendent of, as well as journeymen plumbers employed by, plumbing firm, *held* not unconstitutional as permitting firm to engage in plumbing business after examination of one member or officer only, thereby discriminating against individual plumbers, though only manager of corporation, formed by several plumbers, not actually doing plumbing work, or persons without knowledge of plumbing, need take examination or procure license.   (*Post, pp.*   14-20.)

Case cited and approved:   State v. Gardner, 58 Ohio St., 599.

Cases cited and distinguished:   Henry v. Campbell, 133 Ga., 882; Schnaier v. Navarre Hotel Co., 182 N. Y., 83.

Code cited and construed:   Sec. 2361 (S.).

---

*Headnotes 1. Constitutional Law, 12 C. J., Section 212; 2. Licenses, 37 C. J., Section 76; 3. Statutes, 36 Cyc., p. 1005.   4. Licenses, 37 C. J., Section 76; 5. Licenses, 37 C. J., Section 76; 6. Licenses, 37 C. J., Section 76 (1926 Anno).

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.— HON. ISRAEL PERES, Chancellor.

W. P. ARMSTRONG, R. I. MOORE and E. B. KLEWER, for appellant.

TOM BELL, for appellee.

MR. MALONE, Special Judge, delivered the opinion of the Court.

The questions presented by this record concern the constitutionality of an act of the legislature, and of an ordinance of the city of Memphis, regulating the licensing of plumbers.

The act in question is chapter 59 of the Public Acts of 1915, which provides for a board for the examination and licensing of plumbers in cities of more than 25,000 inhabitants, according to the federal census of 1910, and subsequent censuses.

The ordinance in question was passed by the city of Memphis in 1900, and also deals with the creation of a board for the examination and licensing of plumbers in the city of Memphis.

The chancellor held the act above mentioned unconstitutional and void, and likewise declared unconstitutional so much of the ordinance as requires plumbers, or any one desiring to do plumbing work, to stand and pass an examination held under the direction of the board of examiners.

The city of Memphis appealed to the court of civil appeals, which court transferred the cause to this court, in view of the constitutional questions involved. *Going* v. *Going* (1923), 148 Tenn., 522, 535, 256 S. W., 890, 31

A. L. R., 633; *Clements* v. *Roberts* (1920), 144 Tenn., 152, 231 S. W., 902; Acts 1909, chapter 192.

Both parties seem to insist on the unconstitutionality of the statute. The complainant, by an amendment to his bill, attacks it as unconstitutional, apparently on the theory that the city of Memphis, in creating and organizing its board, was acting pursuant to the authority conferred by this act.

The defendants, on the other hand, state that they are advised that the act is unconstitutional, and that its provisions in no wise conflict with or control the ordinance in question, which was passed, as already stated, in the year 1900, and under which they claim to act.

While it might, perhaps, seem that this renders a consideration of the statute unnecessary, yet this is not so. For the complainant insists in his bill, and before this court, that there is no authority for the creation, by the city of Memphis, of the present board of plumbing examiners. If the act be, in fact, valid, and if it supersedes previous legislation, wholly or partially, this might bear directly on the questions presented by this appeal. *Wilkie* v. *Chicago* (1900), 188 Ill., 444, 58 N. E., 1004, 80 Am. St. Rep., 182.

Leaving this act out of consideration for the moment, and disregarding its possible influence, we think it plain that the city of Memphis was authorized to pass an ordinance on this subject pursuant to the provisions of chapter 163 of the Acts of 1889, which amended the existing charter of Memphis so as "to empower said municipality to regulate and control plumbers and plumbing works, and to enforce efficiency of same." Section 2, subd. 2. This provision was in force in 1900.

Any such ordinance, however, would have to be consonant with the Constitution and statutes of the United States and of the State, and with the general principles of the common law, and its execution must not be left to the caprice of those whose duty it is to enforce it. It must be just, impartial, and reasonable. *Jones* v. *Nashville* (1902), 109 Tenn., 550, 557, 558, 72 S. W., 985.

1. As to the statute:

It seems to be virtually conceded, that this act is unconstitutional, and we think the chancellor was correct in his decree on this point.

(a) There is no reason why master plumbers, in cities or towns of twenty-five thousand or more inhabitants, should be required to pay a license fee of $25, and execute a bond in the sum of $2,500 as provided by section 6 of the statute, nor why the journeymen plumbers should be required to take out a license, nor why both journeymen and master plumbers should be required to stand an examination before the board in such towns, while plumbers in towns of 24,000 inhabitants are not burdened with any of these obligations. *State ex rel. Chapel* v. *Justus* (1903), 90 Minn., 474, 97 N. W., 124.

In that case there was at least an attempt at fixing a logical basis for classification, for the act related to "any city or town with a population of 10,000 or more, which has a system of sewer or waterworks." The court said (pages 475, 476 [97 N. W., 124]):

"We consider that there is no reasonable ground for distinction in the application of such a law to cities with or without sewer and water systems. The object to be attained by the act is to prevent unskilled workmen from

setting death traps emitting poisonous air. It is a matter of common knowledge that in many of the villages of the State where they have not been able to install water plants or sewer systems, the inhabitants frequently provide for themselves sewer systems, by means of cesspools and other ways of drainage; and in cities of ten thousand people or less, where sewer and water systems are installed, those who are not accessible to the established system install their private plants. It is the effect that faulty plumbing has upon the inmates of the building wherein it is perpetrated which is sought to be corrected. The purpose is to protect people's health and comfort. The effect of imperfect plumbing is as pernicious, so far as those directly affected are concerned, in a village or town without a sewer or water system, as where such public works exist. It is true that in communities where the larger number of people are centered there may be a violation of the laws of health to a greater extent, but this is merely a difference in degree and not in character, and the classification based upon such a principle is purely arbitrary."

(b) Section 6 of this act provides: "That before any person, firm or corporation shall hereafter engage in the business of master plumber or journeymen as defined in section 5 of this act, shall apply to said board for a license to practice as master plumber, and the applicant, if a person, or if a corporation, one of the officers or a representative and agent thereof to be designated by said corporation, or if a firm, one of the members thereof shall present himself before the board at a time and place fixed by the said board. If the board shall

find upon due examination that the applicant presenting himself is of a good moral character, and has a satisfactory knowledge of plumbing and the natural laws pertaining thereto and governing the same, and the use and function of fixtures, soil pipes, vent pipes and devices in connection with sanitary plumbing, and is possessed of skill and knowledge in all matters pertaining to the business of a master plumber as defined in section 5 of this act, the said board upon payment of the fee, and upon the execution of a bond herein provided for shall issue to the person, firm or corporation a license as master plumber to practice said business for a term of one year, and shall register such person, firm or corporation as a duly licensed master plumber.

"Provided: That no master plumber's license shall be granted to any person who has not first taken and subscribed to an oath that he, or in case of a corporation, one of the principal officers or the representative and agent thereof, and in case of a firm, one of the members thereof has had at least three years' actual experience as a master plumber within the term of this act, or as a journeyman plumber with four years' actual experience as a journeyman plumber, before the board shall issue to the applicant a license as master plumber."

It is argued that this is plainly a discrimination in favor of firms or corporations as against individuals engaged in the plumbing business, within the rule announced in *Vicksburg v. Mullane* (1913), 106 Miss., 199, 63 So., 412, 50 L. R. A. (N. S.), 421; *State* v. *Gardner* (1898), 59 Ohio St., 599, 51 N. E., 136, 41 L. R. A., 689, 65 Am. St. Rep., 785; *State ex rel. Winkler* v. *Benzen-*

*berg,* 101 Wis., 172, 76 N. W., 345; *Henry* v. *Campbell* (1910), 133 Ga., 882, 67 S. E., 390, 27 L. R. A. (N. S.), 283, 18 Ann. Cas., 178.

In the case of *State ex rel. Winkler* v. *Benzenberg,* supra, it was said:

"Under the law before us, it seems entirely clear that there is discrimination in favor of firms and corporations as against a plumber doing business alone. · The plain meaning and effect of the law is that several plumbers may form a partnership or corporation, and all engage in practical plumbing, when only one of their number has obtained, or perhaps is able to obtain, a certificate of competency. Thus, three or four incompetent plumbers may associate themselves with another who has a certificate, and become thus enabled to do business, while a man perfectly competent, but doing business alone, must go through an examination and obtain a certificate. This is certainly discrimination between persons under the same circumstances and conditions. It grants special privileges to members of a firm or corporation, and imposes special restrictions upon persons engaged in the same business who wish to prosecute their business alone."

And in *Vicksburg* v. *Mullane,* supra, it was said: "It seems to us that this ordinance imposes special restrictions and burdens on some and grants special privileges to others engaged in the same work in Vicksburg. All the plumbers in that city are not required to stand the examination and incur the expenses of a license fee. This burden is not placed on those working for a corporation where an officer qualifies, or on a firm where

one member procures license. It is imposed upon those like Mr. Mullane, laboring alone, doing his work by his own hands.

"If a plumber works for a firm or corporation, he will not have to comply with the requirements of examination and pay for license. But he will have to do so if he attempts to work alone. No matter how skilled and competent he may be, he must be under the employment of a firm or a corporation, or he must bear the burden of examinations and expense of fee. A firm or corporation, under the ordinance, may employ plumbers without number who, when so employed, are taken from the operation of the ordinance. Surely this amounts to discrimination against plumbers working alone, and in favor of plumbers employed by a corporation or a firm, and also in favor of corporations and firms. Surely this will tend to monopoly."

While it is perhaps unnecessary to pass on this question, we think that the statute permits members of a firm to engage in actual plumbing work, where only one member has stood the required examination, and thus unjustly discriminates against the complainant, and individuals in like condition.

2. As to the ordinance:

(a) It is boldly claimed by the appellee that the ordinance is unconstitutional because the State itself has no right to require the examination and licensing by a board of persons engaged in a mere trade, to-wit, the trade of plumbing.

It is insisted that such statutes and ordinances, while nominally concerned with the public health, are mere

schemes devised for the aggrandizement of certain classes. In this connection the appellee relies on the case of *State ex rel. Richey* v. *Smith* (1906), 42 Wash., 237, 248, 84 P., 851, 854, 5 L. R. A. (N. S.), 674, 679 (114 Am. St. Rep., 114, 7 Ann. Cas., 577), where the court said:

"We cannot close our eyes to the fact that legislation of this kind is on the increase. Like begets like, and every legislative session brings forth some new act in the interest of some new trade or occupation. The doctor, the lawyer, the druggist, the dentist, the barber, the horseshoer, and the plumber have already received favorable consideration at the hands of our legislature, and the end is not yet, for the nurse and the undertaker are knocking at the door. It will not do to say that any occupation which may remotely affect the public health is subject to this kind of legislation and control. Our health, our comfort, and our well-being are materially affected by all of our surroundings—by the houses we live in, the clothes we wear, and the food we eat. The safety of the traveling public depends in no small degree on the skill and capacity of the section crews that build and repair our railroads; yet are we on this account to add the architect, the carpenter, the tailor, the shoemaker, those who produce and prepare our food, and all the rest to the ever growing list? If so, it will be but a short time before a man cannot engage in honest toil to earn his daily bread without first purchasing a license or permit from some board or commission. The public health is entitled to consideration at the hands of the legislative department of the government; but it must be remembered that liberty does not occupy a secondary

place in our fundamental law. Under some of the acts to which we have referred, members of the board of health form part of the examining board; but our act has not even this saving grace. By its terms two master plumbers and one journeyman plumber are constituted the guardians of the public health and welfare. We are not permitted to inquire into the motive of the legislature, and yet, why should a court blindly declare that the public health is involved, when all the rest of mankind know full well that the control of the plumbing business by the board and its licensees is the sole end in view? We are satisfied that the act has no such relation to the public health as will sustain it as a police or sanitary measure, and that its interference with the liberty of the citizen brings it in direct conflict with the Constitution of the United States.''

In spite of the vigorous attack made on such legislation, in the above and other cases, the clear weight of authority, we think, sustains its constitutionality. *Vicksburg* v. *Mullane,* supra, and authorities reviewed in 50 L. R. A. (N. S.), 421, note.

The trade of plumber can hardly be said to stand on the same basis as that of a carpenter, a shoemaker or a blacksmith. It is undoubtedly true that bad work by any of these artisans would tend to a greater or less degree to impair the health or safety of the public, or certain individuals thereof.

But, as pointed out in *Ex parte Smith* (1910), 231 Mo., 111, 132 S. W., 607:

''The great weight of authority in this country is to the effect that the business of plumbing is so intimately

connected with the public health, especially in large centers of population where scarlet fever, typhoid fever, diphtheria and other diseases are apt to become epidemic, as to be the proper subject of police regulation.''

Again, as stated in *Commonwealth* v. *Beaulieu*, (1912), 213 Mass., 138, 142, 99 N. E., 955, 956, Ann. Cas., 1913E, 1080, 1081:

''Plumbing work is frequently installed in dark and comparatively inaccessible places. It is obvious that if the work be badly done the public health may be endangered, and that the defect by reason of its location may not be suspected until after a considerable time. In view of the relation between plumbing work and the public health, the legislature may take reasonable precautions for the protection of the public health from the incapacity and ignorance of the worker. Such is the general weight of the authorities.''

And, as stated by the supreme court of Wisconsin, in the case of *State ex rel. Winkler* v. *Benzenberg*, supra:

''Under modern systems of house building and disposal of sewage, the dangers to the health of the entire public, arising from defective plumbing, are so great, and at the same time so insidious, that were the State unable to provide for the proper regulation and supervision of the plumber in his work so as to minimize the danger to the public health from the escape of sewer gas, the State would certainly be unable to protect the public life and health in a most important particular.''

We are satisfied of the right of the State and its municipalities to deal with this subject by proper and authorized legislation.

(b)   But it is equally well settled that such legislation must not be discriminatory, as we have shown in the authorities already cited and reviewed in connection with the constitutionality of the statute here involved.

It is earnestly insisted that the ordinance is likewise amenable to this criticism, and is therefore unconstitutional.

The portions of the ordinance in question, which are alleged to be discriminatory, are found in sections 1 and 2, reading as follows:

"Section 1, art. 1.  *License Required.*  No person, firm, or corporation engaged in or working at the business of plumbing shall engage in or work at said business in the City of Memphis, either as master employer or journeyman plumber, unless such person, firm or corporation first receive a license therefor, in accordance with the provisions of this ordinance.

"Sec. 2, art. 2.  *Examination for License.*  Any person desiring to engage in or work at the business of plumbing, either as master employer or journeyman plumber, in the City of Memphis, shall be required to submit to an examination before a Board of Examiners, as hereinafter provided, as to his experience and qualifications in such trade, business or calling.

"In the case of a firm or corporation engaged in the business of plumbing, the manager or superintendent of such firm shall be examined and licensed, as well as the journeyman plumbers employed."

It is argued that these provisions bring the case within *Vicksburg* v. *Mullane* and the other authorities from which we have quoted in dealing with the statute.

It will be perceived that the provisions of the statute and of the ordinance are not the same.

The statute, in effect, prescribes that one member of a firm, or one officer of a corporation, may stand the examination and receive the license, and the firm or corporation is then qualified to engage in the plumbing business.    This makes the act discriminatory, and brings it within the condemnation of the authorities already reviewed, for the reasons therein stated.

But this reasoning does not apply to the ordinance, which distinctly provides that in the case of a firm or corporation, "manager or superintendent of such firm shall be examined and licensed, as well as the journeyman plumbers employed."

The ordinance further provides that all plumbers, whether master employers or journeymen, must stand the examination and receive the license.

We think the clear intendment of this language is that no firm or corporation shall employ any plumbers who are not duly licensed.    It is not like the ordinance construed in *Vicksburg* v. *Mullane,* supra, by the terms of which any member of a firm might stand the examination, and the firm might then engage in business by employing any number of unlicensed plumbers.

In *Vicksburg* v. *Mullane,* the ordinance provided that the applicant should pass a thorough examination, etc., "and shall satisfy the said board that the applicant, or at least one resident member of the firm, or one resident executive officer of the corporation making the application, is a master plumber, or a drain layer, as the case may be, skilled and experienced in his trade, competent

to do sanitary plumbing or drain laying properly," etc.

In *State ex rel. Winkler* v. *Benzenberg* the ordinance provided that: "In the case of a firm or corporation, the examining or licensing of any one member of the firm or the manager of the corporation shall satisfy the requirement of this act."

In *State* v. *Gardner* (1898), 58 Ohio St., 599, 51 N. E., 136, 41 L. R. A.., 689, 65 Am. St. Rep., 785, the act, after directing that every person, firm or corporation engaged in the business of plumbing, either as master or employing plumber or journeyman, should first secure a license, further provided that "in case of a firm, or cor- poration the examination and licensing of any one member of such firm or the manager of the corporation, shall satisfy the requirements of the act."

In the case of *Henry* v. *Campbell* (1909), 133 Ga., 882, 67 S. E., 390, 27 L. R. A. (N. S.), 283, 18 Ann. Cas., 178, the ordinance provided that no person, firm or corporation should engage in the business of plumbing in the city of Atlanta either as master, employing or journey- man plumber, without receiving a license after examination before a board of examiners, etc., and then provided that:

"In the case of a firm or corporation, the [examination or] licensing of any member of the firm or the manager of the corporation shall satisfy the requirements of this ordinance."

It is true that, by the provisions of the ordinance under consideration, a corporation might be formed by several plumbers, or even by persons who know nothing of plumbing, and only the manager of said corporation

need take the examination to receive the license.  But we are unable to see that this would unjustly discriminate against the complainant.  Such a corporation is legally permissible in this State.  Code (Shannon), section 2361.

If the ordinance undertook to provide that officers of such a corporation, or members of a firm, whose duties were in no wise connected with the actual work of plumbing, must nevertheless stand the examination and secure the license, this would plainly be not only unreasonable, but unconstitutional.  *Schnaier* v. *Navarre Hotel Co.* (1905), 182 N. Y., 83, 74 N. E., 561 70 L. R. A., 722, 108 Am. St. Rep., 790.

In that case the act provided, in substance, that every member of a firm engaged in the plumbing business must be a registered plumber.  The plaintiffs constituted a firm, one member being a practical plumber and the other an office man who knew nothing of plumbing and looked after the finances.  He, of course, could not be registered.  Plaintiffs were denied a recovery on this ground.  Reversing the case, the New York court of appeals said:

"It cannot be denied that the statute in question operates to prohibit two persons, situated as the firm in this case was, to enter into partnership for conducting a legitimate business.  It prohibits a business man, with financial means and business ability, and a registered master plumber with the requisite mechanical skill, from uniting the financial and business ability of the one with the energy and mechanical skill of the other in a partnership for conducting a legitimate business.  The right to form partnerships for the conduct of busi-

ness has existed from time immemorial, and any interference with that right must be regarded as an unwarranted interference with individual freedom condemned by the Constitution. The feature of the statute to which I have referred would deprive a firm engaged in the plumbing business, composed of half a dozen persons, from enforcing contracts and collecting their bills for work done, unless they could show that each and every member of the firm was a registered plumber; and if, as in this case, it was impossible for one of them to become registered, the firm must dissolve. A law that produces such results in its operation cannot be valid."

Nor do we think that the ordinance discriminates against the complainant, because a firm might be formed to engage in the plumbing business, and some of the members who did no plumbing work of any sort as laborers or supervisors would not be required to take out a license. Suppose, for example, A. and B. should form a firm, A. being the practical plumber, and B. furnishing the capital. There would be no discrimination against the complainant in such case, even though B. was not required to stand an examination nor procure a license.

The reasoning of *Vicksburg* v. *Mullane,* and similar cases, is that under the ordinances there involved three or four incompetent plumbers might unite with one good plumber to form a partnership, and all do work under the license issued to the one competent man. But this is not possible under the ordinance which we are considering in this case, because every one who does any actual plumbing work, either as master employer or as journeyman plumber, must be licensed. Nobody but the

licensed "manager" of a corporation or the licensed "superintendent" of a firm can even supervise the plumbing work which such firm or corporation may do. It is only upon this construction that we sustain the ordinance, which would otherwise be unreasonable and unconstitutional.

3. The complainant, in his bill, alleges that he was unfairly treated in the matter of his examination; that he was not permitted to see his papers, nor was he advised wherein his answers had been erroneous, and that the purpose of the board was to force him to join the plumbers' association in the city of Memphis, which he had refused to join. These charges were denied in the sworn answers of the board, and of the city of Memphis, and no proof was introduced to sustain them. The case seems to have been decided on the admissions in the answers which sufficiently showed the complainant's inter est and the existence of the ordinance which was attacked the constitutional questions alone being considered. The chancellor made an indorsement on the original bill, directing the clerk to notify defendants that the application for injunction, as prayed in the bill, would be heard on June 5, 1922. The sworn answers of the defendants were filed on June 15, 1922, and the final hearing was had on July 12, 1922.

The bill waived the oath to the answers, and, while they might have been used as affidavits on motion for preliminary injunction, they were not evidence in the case.

The decree recites that "arbitrary, partial, or invidious action of the board is not now before the court. . . ." It is not clear what this means.

The decree must be reversed, in so far as the ordinance is concerned, but in view of the rather confused state of the record, the bill will be dismissed without prejudice to the right of the complainant to review the action of the board by *certiorari,* or other appropriate remedy, if so advised.